Louis Pechman (LP-6395)
Jessica Tischler (JT-1582)
Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

EFREN OYERBIDE, FRANKLYN ALVARADO,
SABINA MAEZ, and FRANQUIL PIEDRA, on
behalf of themselves and all
others similarly situated,

                 Plaintiffs,

-against-

NELLO BALAN, THOMAS MAKKOS,
MADISON GLOBAL LLC, TD SOURCE, INC.,
and K-2 REST. CORP.,

                 Defendants.

------------------------------------------------------------X

09 Civ. 9940 (PAC) (MHD)

**COMPLAINT**

**COLLECTIVE ACTION**

**ECF CASE**

Plaintiffs Efren Oyerbide, Franklyn Alvarada, Sabina Maez, and Franquil Piedra ("plaintiffs"), former employees of the restaurant Nello, by their attorneys, Berke-Weiss & Pechman LLP, complaining of defendants Nello Balan, Thomas Makkos, Madison Global LLC, TD Source, Inc., and K-2 Rest. Corp. (collectively referred to herein as "Nello" or "defendants"), allege:

### NATURE OF THE ACTION

1. This action is brought to recover unpaid minimum wages, unlawfully expropriated tips, unpaid overtime, and other monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190 *et seq.* ("NYLL"), on behalf of waiters, busboys and bartenders (the "waitstaff") who worked at the Nello restaurants in New York City and Southampton.

2. For at least six years prior to the filing of this Complaint – the statute of limitations under the NYLL – continuing to the present, defendants have failed to compensate their waitstaff at the federal and state minimum wage, unlawfully appropriated a portion of their tips, made unlawful deductions from their wages, failed to pay their waitstaff statutorily prescribed overtime and spread-of-hours pay, and forced their waitstaff to pay for the costs of purchasing and maintaining their required uniforms.

3. Plaintiffs seek injunctive and declaratory relief against defendants' unlawful actions, compensation and credit for the difference between the hourly minimum wage and the hourly wages actually paid to plaintiffs, unpaid tips, unpaid wages, unpaid overtime wages, liquidated damages, interest, and attorneys' fees and costs pursuant to the FLSA and the NYLL.

## JURISDICTION

4. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiffs' claims under the NYLL pursuant to 28 U.S.C. §§ 1332 and 1367.

## VENUE

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, as the location of Nello, the restaurant where plaintiffs worked, is in the Southern District of New York.

## THE PARTIES

**Plaintiffs**

6. Efren Oyerbide resides in Queens, New York. Oyerbide worked as a waiter at Nello from 1994 through 1999 and July 2006 through January 2009.

7. Franklyn Alvarado resides in Queens, New York. Alvarado worked as a waiter at Nello from on or about August 2005 through November 2008.

8. Sabina Maez resides in Queens, New York. Maez worked as a waitress at Nello from 2004 through 2005.

9. Franquil Piedra resides in Queens, New York. Piedra worked at Nello from 1999 through December 2008, first as a cashier and driver, and then as a waiter beginning in 2004.

10. Plaintiffs were defendants' employees within the meaning of the FLSA and the NYLL, and worked for defendants' New York restaurants as employees subject to the tip credit provisions of the NYLL and the FLSA.

**Defendants**

11. Defendant Madison Global LLC is the New York corporation that currently owns and operates Nello, a restaurant located at 696 Madison Avenue, New York, New York, 10021, and the associated restaurant Nello Summertimes, located at 136 Main Street, Southampton, New York, 11968. Upon information and belief, the predecessor corporate identities of Madison Global LLC include Nello NY Ltd., Nello's on Madison, Inc., Midtown Technologies, Inc., K-2 Rest. Corp., 999 Restaurant Corp., 1350 Sixth Avenue Corp. and TD Source, Inc. Madison Global LLC is the successor corporation to these predecessor corporations.

12. Defendant TD Source, Inc. is the New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello, a restaurant located at 696 Madison Avenue, New York, New York, 10021, and the associated restaurant Nello Summertimes, located at 136 Main Street, Southampton, New York, 11968. Upon information and belief, the predecessor corporate identities of TD Source, Inc. include Nello NY Ltd., Nello's on Madison, Inc., Midtown Technologies Inc., K-2

Rest. Corp., 999 Restaurant Corp., and 1350 Sixth Avenue Corp. TD Source, Inc. is the successor corporation to these predecessor corporations.

13. Defendant K-2 Rest. Corp. is the New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello, a restaurant located at 696 Madison Avenue, New York, New York, 10021, and the associated restaurant Nello Summertimes, located at 136 Main Street, Southampton, New York, 11968. Upon information and belief, the predecessor corporate identities of K-2 Rest. Corp. include Nello NY Ltd., Nello's on Madison, Inc., Midtown Technologies Inc., 999 Restaurant Corp., TD Source, Inc., and 1350 Sixth Avenue Corp. K-2 Rest. Corp. is the successor corporation to these predecessor corporations.

14. Defendant Nello Balan ("Balan") is an owner of Nello, and at all times material herein established and had authority regarding the pay practices at Nello.

15. Upon information and belief, defendant Thomas Makkos ("Makkos") is an owner of Nello, and since on or about December of 2008 took on a managerial and ownership role at the restaurant and had authority regarding the pay practices at Nello.

16. Nello and Nello Summertimes, the two restaurants which are the subject of this lawsuit, are a single and joint employer and have had a high degree of interrelated and unified operations and share common management, centralized control of labor relations, common ownership, common control, common business purposes, and interrelated business goals.

## COLLECTIVE ACTION ALLEGATIONS

17. The claims in this Complaint arising out of the FLSA are brought by plaintiffs on behalf of themselves and similarly situated persons (*i.e.* waiters, bartenders, and busboys) who are current and former employees of Nello since the date

three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

18. The FLSA Collective consists of employees who have been victims of defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum wage, tips that they earned, overtime, and other wages.

19. The FLSA Collective consists of waiters and busboys who, during their employment at Nello, fell into the category of "tipped employees" who customarily and regularly earn more than $30.00 per month in tips and were required by defendants to participate in a tip-pooling scheme at Nello. 29 U.S.C. § 203(t).

20. As part of its regular business practice, defendants have intentionally, willfully, and repeatedly harmed plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and NYLL. This policy and pattern or practice includes, *inter alia*, the following:

   a. depriving its waitstaff of tips that they earned;

   b. improperly taking a "tip credit" for its waitstaff;

   c. failing to keep accurate records of hours worked by employees as required by the FLSA and the NYLL;

   d. failing to pay employees for all time worked in excess of 40 hours per week;

   e. redistributing portions of the tips earned by its waitstaff to managers, cashiers, doormen, drivers, and other individuals who were not entitled to tips under the FLSA and the NYLL;

   f. forcing employees to purchase their own required uniform and pay for required uniform upkeep;

   g. making unlawful deductions from the tips earned by its waitstaff to cover broken glasses and customer walkouts; and

5

h. failing to pay employees spread-of-hours compensation of one hour's pay at the minimum wage for each day in which they worked more than ten hours.

21. Defendants have engaged in unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA.

22. The FLSA Collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to defendants, are readily identifiable by defendants, and are locatable through defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

## THE LAW REGARDING "TIPPED EMPLOYEES"

23. The FLSA and the NYLL allow employers of "tipped employees" to pay their tipped employees at a rate below the federal and state minimum wages. The FLSA and the NYLL provide that, in order to be eligible for this "tip credit," or "tip allowance," employers of tipped employees must allow employees to keep all the tips that they receive.

24. Under the FLSA and the NYLL, managers and other non-tipped employees are prohibited from sharing in the tips received by "tipped employees."

25. The FLSA and the NYLL permit employees to participate in a "tip pool," where tipped employees pool all of their tips together and then redistribute them amongst themselves as they choose, so long as the tip pool is voluntary. The tip pool is unlawful, however, where that tip pool is forced upon the waitstaff by the restaurant and/or where a non-tipped employee participates in the pool.

## THE UNLAWFUL TIP POOL AT NELLO

26.     Defendant Balan established and imposed an involuntary tip pool upon Nello's waitstaff, requiring them to share a percentage of their tips with managers, cashiers, doormen, drivers and other non-tipped employees.

27.     The accounting and distribution of the tip pool at the restaurant is solely at the prerogative of the owners of Nello.

28.     The tip pool at Nello is divided by management so that each waiter and bartender receives a "full share" of the tip pool and each busboy gets a "half share" of the tip pool. However, waitstaff's shares were sometimes adjusted by defendant Balan depending on whether they were in or out of favor with management.

29.     Employees who are "non-tipped" employees, however, also receive shares from the tip pool at Nello. Those individuals, some of whom should not receive any shares from the tip pool (much less a share greater than that of a waiter), include the following:

- Managers, currently daytime manager George Gutakolis and night-time manager "Zack," each receive a "one and a half share" from the tip pool. These managers, who have the power to hire, fire, schedule employees and purchase supplies, also receive a weekly salary in addition to their share in the tip pool.

- Cashiers, including daytime cashier "David" and night-time cashier "Chen," each receive a "one and one quarter share" from the tip pool. Cashiers, who have little to no customer interaction, are stationed at the cash register and are responsible for running credit cards, making change, going to the bank, dividing the pooled tips into appropriate shares, and running tip reports and sales reports at the end of their shifts.

- Balan's personal driver received a "three-quarter share" from the tip pool (The driver typically spent most of his time outside of the restaurant, waiting in Balan's Range Rover or running errands for defendants).

- "Mario," a childhood friend of Balan, is a waiter, but due to his friendship with Balan, received a "one and one half share" from the tip pool, despite having the same responsibilities as waiters receiving only one share of the pool.

7

- Balan's daughter, Lucy Balan, who serves as a hostess/manager at the restaurant, receives a "one and one quarter share" of the tip pool. (Lucy Balan receives her share from the tip pool even during shifts in which she spends a significant portion of her time dining at the restaurant, being served by the waitstaff).

- The doorman receives a "three-quarter share" from the tip pool.

30. Although managers often receive "handshake" tips from customers, they keep these tips rather than putting them into the tip pool. As such, the protocol at the restaurant is that managers share the tips of the waitstaff but the waitstaff does not share in the tips given to managers.

31. By these and other acts, defendants have taken gratuities belonging to the waitstaff and unlawfully diverted them to managers and other employees who are not entitled to share in the tip pool at the restaurant, thereby preventing the waitstaff from retaining tips in violation of the FLSA and NYLL.

32. In doing so, defendants diverted well in excess of one hundred thousand dollars in the waitstaff's tips each year to non-tipped employees.

33. Because defendants established an illegal tip-pooling scheme at Nello, they are not entitled to reduce the minimum wages of plaintiffs and the other waiters employed at the restaurant by applying the tip credit allowance that is available under the FLSA and the NYLL.

34. Defendants' improper application of the tip credit deprives plaintiffs and other similarly situated employees at Nello of their statutory minimum wage under the FLSA and the NYLL.

## THE FAILURE TO PAY FULL WAGES AT THE SOUTHAMPTON LOCATION

35. In 2005, Nello began operating a restaurant called "Nello Hotel" and "Nello Summertimes" at 136 Main Street, Southampton, New York, 11968. Nello Summertimes was open during the summers of 2005 through 2009.

36. Nello staffed Nello Summertimes with the management and waitstaff from the Manhattan restaurant, which is less busy during the summer months.

37. For their work at the Southampton restaurant, plaintiffs regularly worked more hours than they were compensated for.

38. While working in Southampton, management engaged in even more severe gouging of the tips of the waitstaff. For example, managers working at Nello Summertimes received a "two and one half share" of the tip pool, even as waiters continued to receive only one share of the pool.

39. On some occasions when the waitstaff worked private parties at Nello Summertimes for which the customers paid a gratuity, waitstaff received only a portion of the gratuity which the customers actually paid.

40. While working in Southampton, management penalized members of the waitstaff who were late to work by reducing their full share in the tip pool to a half share. This was a particularly egregious penalty given the fact that Nello's Manhattan waitstaff were required to commute to Southampton without being compensated for the time or expenses of this lengthy commute.

## THE FAILURE OF NELLO TO PAY OVERTIME AND FOR ACTUAL HOURS WORKED

41. The FLSA and NYLL require that employers pay all employees one and one half (1½) times their regular rate of pay for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

42. At various periods within the statute of limitations under the FLSA and NYLL, Nello did not record actual hours worked by its waitstaff and had a policy and practice of shaving hours off of its employees' time records and not paying for all actual hours and overtime hours worked by its employees.

## SPREAD-OF-HOURS VIOLATIONS

43. The waitstaff at Nello frequently work more than ten (10) hours per day. However, Nello does not pay them the required spread-of-hours pay of an additional hour's pay at the minimum wage for every day in which each of their shifts span more than ten (10) hours.

## UNIFORM VIOLATIONS

44. Nello requires its waitstaff to wear a specific suit as their uniform, and each waiter is required to purchase suits from specified designers through a vendor chosen by Balan. These suits cost up to $750 each, and the waitstaff is required to purchase two suits each.

45. Nello deducted one hundred ($100) dollars per week from its waitstaff's wages to pay for the required uniforms.

46. Moreover, any time Balan changes the style of suit which comprises the waitstaff's uniforms, the waitstaff has to purchase new suits. In addition, the waitstaff was required to purchase a different suit for Nello Summertimes than they wore in the Manhattan restaurant.

47. Nello does not reimburse its waitstaff for the costs of maintaining these uniforms.

## DEDUCTIONS

48. Nello makes unlawful deductions from the wages of its waitstaff. For example, if a glass is broken during service, the employee responsible for the breakage

10

was charged between ten and fifteen dollars. In addition, the waitstaff is charged for customer walkouts.

## CREDIT CARD TIPS

49. For certain periods in or about 2007 and 2008, Nello did not immediately pay its waitstaff for tips left on credit cards. Rather, payment to the waitstaff of tips left on credit cards was subject to a delay, often of up to several months.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

50. Plaintiffs repeat and reallege paragraphs 1 through 49 as if fully set forth herein.

51. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

52. Defendants were required to pay to plaintiffs and the FLSA Collective the applicable federal minimum wage rate.

53. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because, *inter alia*:

   a. Defendants were required to but failed to inform plaintiffs and the FLSA Collective of the provisions of § 203(m) of the FLSA, 29 U.S.C. § 203(m); and

   b. Defendants unlawfully redistributed portions of the tips received by plaintiffs and the FLSA Collective to employees in positions that do not customarily and regularly receive tips, in violation of the FLSA, 29 U.S.C. § 203(m) and supporting regulations.

54. Defendants failed to pay plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

55. Defendants failed to pay plaintiffs and the FLSA Collective for the actual hours they worked.

11

56. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs and the FLSA Collective.

57. As a result of defendants' willful violations of the FLSA, plaintiffs and the FLSA Collective suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

58. Plaintiffs repeat and reallege paragraphs 1 through 57 as if fully set forth herein.

59. Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed plaintiffs and the FLSA Collective.

60. Defendants failed to pay plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the NYLL.

61. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the plaintiffs and the FLSA Collective minimum hourly wages.

62. As a result of defendants' violations of the NYLL, plaintiffs and the FLSA Collective are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre-judgment and post-judgment interest.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

63. Plaintiffs repeat and reallege paragraphs 1 through 62 as if fully set forth herein.

64. Defendants were required to pay plaintiffs and the FLSA Collective no less than one and one-half (1½)times the regular rate at which plaintiffs and the FLSA Collective were employed for all hours worked in excess of forty (40) hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq.*

65. Defendants failed to pay plaintiffs and the FLSA Collective the overtime wages to which they are entitled under the FLSA.

66. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay plaintiffs and the FLSA Collective overtime wages.

67. Due to defendants' violations of the FLSA, plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FOURTH CLAIM
### (New York Labor Law – Unpaid Overtime)

68. Plaintiffs repeat and reallege paragraphs 1 through 67 as if fully set forth herein.

69. Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiffs and the FLSA Collective time and one half of the regular rate for all hours they worked in excess of forty (40).

70. Defendants failed to pay plaintiffs and the FLSA Collective the overtime wages to which they are entitled under the NYLL.

13

71. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs and the FLSA Collective the correct amount of overtime wages.

72. Due to defendants' willful violations of the NYLL, plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre-judgment and post-judgment interest.

### FIFTH CLAIM
### (New York Labor Law - Unlawful Deductions)

73. Plaintiffs repeat and reallege paragraphs 1 through 72 as if fully set forth herein.

74. New York Labor Law § 193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law.

75. New York Labor Law § 196-d prohibits any employer or his agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity or any charge purported to be a gratuity for an employee.

76. Defendants unlawfully retained tips from plaintiffs and the FLSA Collective and unlawfully redistributed their tips to non-tipped employees.

77. Defendants' knowing and intentional wage deduction, and their demand and retention of waitstaff tips, were willful violations of the NYLL and supporting Department of Labor Regulations.

78. As a result of defendants' willful violations of the NYLL, plaintiffs and the FLSA Collective are entitled to recover from defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment and post-judgment interest.

14

## SIXTH CLAIM
### (New York Labor Law – Uniform Expenses)

79. Plaintiffs repeat and reallege paragraphs 1 through 78 as if fully set forth herein.

80. Defendants required plaintiffs and the FLSA Collective to wear uniforms that were not composed of ordinary street clothing and did not permit variations in details of dress. Defendants prescribed a specific type and style of clothing to be worn at work.

81. Defendants gave plaintiffs and the FLSA Collective uniforms and then deducted $100 per week from their pay checks to cover the costs of the required uniform, in violation of the NYLL and its supporting regulations, N.Y.C.R.R. § 137-1.8.

82. Defendants also unlawfully required plaintiffs and members of the FLSA Collective to launder and maintain their uniforms and failed to provide plaintiffs with pay in addition to the minimum wage for these costs, in violation of the NYLL and its supporting regulations, N.Y.C.R.R. § 137-1.8.

83. Plaintiffs and the members of the FLSA Collective incurred the costs of purchasing and laundering the uniforms for the benefit and convenience of defendants.

84. It was defendants' policy, and pattern or practice to deduct the cost of the required uniforms from plaintiffs' and the FLSA Collective's pay checks and to not pay for the laundering of plaintiffs' and the FLSA Collective's uniforms.

85. Defendants' deduction of the cost of the required uniforms from plaintiffs' and the FLSA Collective's pay checks, and their failure to reimburse plaintiffs and the FLSA Collective for the cost of laundering these uniforms, reduced plaintiffs' and the FLSA Collective's wages to a level below the required minimum wage and overtime pay.

86. Due to defendants' willful violations of the NYLL, plaintiffs and the FLSA Collective are entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest, and liquidated damages.

## SEVENTH CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

87. Plaintiffs repeat and reallege paragraphs 1 through 86 as if fully set forth herein.

88. Defendants have willfully failed to pay plaintiffs and the FLSA Collective additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than ten hours.

89. By defendants' failure to pay plaintiffs and the FLSA Collective spread-of-hours pay, defendants have willfully violated the NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137-1.7, 3.10.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs on behalf of themselves and the FLSA Collective, respectfully request that this Court enter a judgment:

    a. to authorize the issuance of notice at the earliest possible time to all tipped employees who were employed by defendants during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt-in to this lawsuit;

    b. to declare that defendants have violated the tip pool provisions of the FLSA and the NYLL;

16

c. to declare that defendants have violated the overtime provisions of the FLSA and the NYLL;

d. to declare that defendants have violated the unlawful deductions provisions of the NYLL;

e. to declare that defendants have violated the uniform provisions of the NYLL;

f. to declare that defendants have violated the spread-of-hours provisions of the NYLL;

g. to declare that defendants' violations of the FLSA were willful;

h. to disgorge from defendants and order that the defendants remit back the amount of the tip credits deducted from the wages of plaintiffs and the FLSA Collective;

i. to award plaintiffs and the FLSA Collective damages for the difference between the full hourly wage as mandated by the FLSA and the NYLL, and the hourly wages actually paid to the plaintiffs and the FLSA Collective for the hours they worked;

j. to award plaintiffs and the FLSA Collective damages for unpaid wages and tips which were unlawfully diverted to non-waitstaff;

k. to award plaintiffs and the FLSA Collective damages for unpaid overtime wages;

l. to award plaintiffs and the FLSA Collective damages for all unauthorized deductions under the NYLL;

m. to award plaintiffs and the FLSA Collective damages for uniform expenses;

n. to award plaintiffs and the FLSA Collective damages for unpaid spread-of-hours compensation;

o. to award plaintiffs and the FLSA Collective liquidated damages under the FLSA and the NYLL;

p. to award plaintiffs and the FLSA Collective prejudgment and post-judgment interest under the NYLL; and

q. to award plaintiffs and the FLSA Collective reasonable attorneys fees' and costs pursuant the FLSA and the NYLL.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury in this action.

Dated: New York, New York
December 3, 2009

BERKE-WEISS & PECHMAN LLP

By: _____
Louis Pechman (LP-6395)
Jessica Tischler (JT-1582)
488 Madison Avenue, 11th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*