UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANTS*
*MADISON GLOBAL LLC and THOMAS MAKKOS*
59 Maiden Lane, 39th Floor
New York, New York 10038-4502
(212) 545-4000

    ATTORNEYS OF RECORD:
        FELICE B. EKELMAN, ESQ.
        ROGER H. BRITON, ESQ.
        NOEL P. TRIPP, ESQ.

------------------------------------------------------x

EFREN OYERBIDE, FRANKLYN ALVARADO, SABINA MAEZ, and FRANQUIL PIEDRA, on behalf of themselves and all others similarly situated,

                        Plaintiffs,

          -against-

NELLO BALAN, THOMAS MAKKOS, MADISON GLOBAL LLC, TD SOURCE, INC., and K-2 REST. CORP.,

                    Defendants.

------------------------------------------------------x

*VIA ECF*

09 CV 9940
Crotty, J.

**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS THOMAS MAKKOS AND MADISON GLOBAL LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE ABSENCE OF SUCCESSOR LIABILITY</u>**

## **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................1

I.   THIS COURT SHOULD ADOPT THE COMMON LAW SUCCESSORSHIP
     TEST APPLIED BY KAUR AND ITS PROGENY. .........................................1

     A.   Another Recent Decision Within This Circuit Reinforces the
          Applicability of the Kaur Test Under the Wage Laws. ........................1

     B.   Plaintiffs' Attempt to Impose NLRA-Based Jurisprudence In The
          FLSA Setting Is Misplaced ...............................................................2

     C.   Even Application Of The So-Called "McMillan Test" Would Not
          Trigger Successor Liability Here .......................................................3

II.  PLAINTIFFS FAILED TO SUBMIT ADMISSIBLE EVIDENCE
     SUFFICIENT TO PROPERLY OPPOSE THE MOTION FOR SUMMARY
     JUDGMENT .................................................................................................4

III. THERE IS NO NEED FOR FURTHER DISCOVERY AS TO FACTS
     BEARING ON SUCCESSORSHIP ..............................................................5

     A.   Plaintiffs Did Not Request Discovery Regarding The Contents Of The
          Motion................................................................................................5

     B.   The Madison Global Defendants' Supplemental Submission Obviates
          Any Need for Discovery ....................................................................6

     C.   Plaintiffs' Belated Request for Discovery Is Not Supported Under
          Rule 56(f) ..........................................................................................7

IV.  999 WAS FULLY AUTHORIZED TO SELL ITS ASSETS TO MADISON
     GLOBAL .....................................................................................................8

     A.   Contrary To Plaintiffs' Assertions, The April 2009 Dissolution By
          Proclamation Of 999 Had No Impact On The Sale Of Assets...............8

CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,
2007 U.S. Dist. LEXIS 27001 (S.D.N.Y. Apr. 2, 2007)....................................................9

Brock v. La Grange Equipment Co.,
1987 U.S. Dist. LEXIS 14532 (D. Neb. 1987) .............................................................3

Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,
769 F.2d 919 (2d Cir. 1985)...................................................................................7

Cesario v. BNI Construction, Inc.,
2008 U.S. Dist. LEXIS 103155 (S.D.N.Y. Dec. 15, 2008) ...............................................3

Chao v. Concrete Management,
2009 U.S. Dist. LEXIS 18619 (D. Kan. 2009) .............................................................3

Dellinger v. Sci. Applications International Corp.,
2010 U.S. Dist. LEXIS 32861 (E.D. Va. Apr. 2, 2010)...................................................2

Desclafani v. Pave-Mark Corp.,
2008 U.S. Dist. LEXIS 64672 (S.D.N.Y. Aug. 22, 2008) ...............................................7

Flute, Inc. v. Rubel,
682 F. Supp. 184 (S.D.N.Y. 1988) ...........................................................................9

Golden State Bottling Co. v. NLRB,
414 U.S. 168 (1973)..............................................................................................3

Kaur v. Royal Arcadia Palace, Inc.,
643 F.Supp2d 276 (E.D.N.Y. 2007) .........................................................................2

Lapine v. Seinfeld,
2009 U.S. Dist. LEXIS 82304 (S.D.N.Y. Sept. 10, 2009)...............................................5

Major League Baseball Properties, Inc. v. Salvino, Inc.,
542 F.3d 290 (2d Cir. N.Y. 2008)............................................................................4

Marshall v. Sam Dell's Dodge Corp.,
451 F. Supp. 294 (N.D.N.Y. 1978)...........................................................................3

New York v. Nat'l Serv. Indus. Inc.,
460 F. 3d 201 (2006)..........................................................................................2, 10

O'Conner v. 11 W. 30th St. Restaurant Corp.,
1995 U.S. Dist. LEXIS 8085 (S.D.N.Y. June 13, 1995)................................................9

Opals on Ice v. Bodylines, Inc.,
320 F.3d 362 (2d Cir. 2003)..........................................................................................5

Said v. SBS Electrics, Inc.,
2009 U.S. Dist. LEXIS 126383 (E.D.N.Y. Mar. 30, 2010).................................2, 9, 10

Steinbach v. Hubbard,
51 F.3d 843 (9th Cir. 1995) ...........................................................................................3

Stern v. Trustees of Columbia University,
131 F.3d 305 (2d Cir. 1997)...........................................................................................4

Torres v. Gristede's Operating Corp.,
628 F. Supp. 2d 447 (S.D.N.Y. 2008).............................................................................4

United States v. Branch,
2006 U.S. Dist. LEXIS 72042 (S.D.N.Y. Oct. 2, 2006) .................................................5

Vasquez v. Ranieri Cheese Corp.,
2010 U.S. Dist. LEXIS 29431 (E.D.N.Y. Mar. 25, 2010) ..............................................2

## STATE CASES

Bowditch v. 57 Laight Street Corp.,
443 N.Y.S.2d 785 (N.Y. Sup. Ct. 1981) .........................................................................9

Harris v. Stony Clove Lake Acres,
221 A.D.2d 833 (3d Dep't 1995)....................................................................................9

## FEDERAL STATUTES

Federal Rule of Civil Procedure 56(f) ............................................................................7

## STATE STATUTES

N.Y. Bus. Corp Law § 1005 ...........................................................................................9

N.Y. Bus. Corp Law § 1006(b)......................................................................................10

## PRELIMINARY STATEMENT

The issue in this case is straightforward: should a purchaser of assets, which explicitly denied assumption of liabilities for employee-related matters, all in an arm's length transaction for substantial consideration, nevertheless be held liable as a successor for the seller's alleged failure to properly make wage payments to seller's employees prior to the sale. Although three courts in this Circuit have now held that only a common law successor can be liable for pre-sale wage claims under the Fair Labor Standards Act ("FLSA"), Plaintiffs argue for application of the so-called "MacMillan Test" which has been applied in other contexts and which, in any event, cannot be met because the purchaser did not have knowledge of the wage claims here at issue when it entered into the transaction. Moreover, to the extent that Plaintiffs' Memorandum of Law ("Pl. Mem.") and the supporting papers submitted therewith (collectively the "Opposition") rely on speculation and hearsay to manufacture purported issues of fact, such inadmissible "evidence" is insufficient to defeat summary judgment. Finally, while Plaintiffs now belatedly seek discovery, they have not met the standards justifying such relief. To eliminate any purported concern that the full details of the transaction be before the Court, the full transactional documents, un-redacted, are being served upon Plaintiffs' counsel pursuant to a confidentiality Stipulation and, with the Court's consent, being filed under seal.

## I. THIS COURT SHOULD ADOPT THE COMMON LAW SUCCESSORSHIP TEST APPLIED BY KAUR AND ITS PROGENY

### A. Another Recent Decision Within This Circuit Reinforces the Applicability of the Kaur Test Under the Wage Laws

As set forth in Defendants Madison Global LLC and Thomas Makkos' ("Madison Global Defendants") initial Memorandum of Law ("Def. MOL") and the April 1, 2010 letter supplement thereto (April 1 Letter), at the time the Madison Global Defendants' Motion was filed, two courts in this Circuit had already applied the common law successorship test under the

Wage Laws. <u>See</u> Def. MOL at 5-6;[1] April 1 Letter.[2]  Since those filings, a third district court in this Circuit has joined <u>Kaur</u> and <u>Ranieri</u> in holding that the common law test is the appropriate test under the Wage Laws. <u>Said v. SBS Elecs., Inc.</u>, 2009 U.S. Dist. LEXIS 126383 at * 7-10 (E.D.N.Y. Mar. 30, 2010).[3]  Reviewing a default judgment taken against several entities, Judge Dearie vacated the portion of the Magistrate's Report and Recommendation which found successor liability under the Wage Laws. <u>Id.</u> at * 7 <u>citing</u> <u>New York v. Nat'l Serv. Indus. Inc.</u>, 460 F.3d 201, 209 (2d Cir. 2006).  Relying on cryptic and belated opposition to the imposition of successor liability, Judge Dearie applied the common law test and found that the "failure to plead continuity of ownership is a fatal defect" to alleged de facto merger under the common law. <u>Said</u>, 2009 U.S. Dist. LEXIS 126383 at * 10.  <u>Said</u> further reinforces the Madison Global Defendants' positions that 1) the common law test articulated for this Circuit by <u>Nat'l Serv. Indus.</u> is the appropriate successorship test under the Wage Laws; and 2) successor liability cannot lie in the circumstances here.

**B.    Plaintiffs' Attempt to Impose NLRA-Based Jurisprudence In The FLSA Setting Is Misplaced**

Plaintiffs' Opposition makes repeated reference to the "labor law" in lower case letters in an effort to apply National Labor Relations Act ("NLRA") jurisprudence to the FLSA, ignoring the fundamental differences in the statutory language and statutory purposes. <u>See</u> e.g., <u>Dellinger v. Sci. Applications Int'l Corp.</u>, 2010 U.S. Dist. LEXIS 32861 at * 14-15 (E.D. Va. Apr. 2, 2010)(rejecting Plaintiffs' attempt to apply NLRA interpretations and definitions to FLSA retaliation lawsuit).

<u>Dellinger</u> highlights that the NLRA and FLSA serve fundamentally different

---

[1] Citing <u>Kaur v. Royal Arcadia Palace, Inc.</u>, 643 F.Supp.2d 276 (E.D.N.Y. 2007).
[2] Citing <u>Vasquez v. Ranieri Cheese Corp.</u>, 2010 U.S. Dist. LEXIS 29431 (E.D.N.Y. Mar. 25, 2010).
[3] The LEXIS citation is dated March 30, 2009; however the opinion clearly indicates that the decision was issued in 2010.

purposes; the NLRA is concerned with the <u>ongoing and future relationship</u> between employers and employees <u>within an industry generally,</u> while the FLSA is concerned solely with a specific employer's obligations to its employees on a workweek-by-workweek basis.  <u>Compare</u> <u>Golden State Bottling Co. v. NLRB</u>, 414 U.S. 168 at n. 2 (1973)("It is the employing *industry* that is sought to be regulated and brought within the corrective and remedial provisions of the Act in the interest of industrial peace")(emphasis added) <u>with</u> <u>Cesario v. BNI Constr., Inc.</u>, 2008 U.S. Dist. LEXIS 103155 at * 7 (S.D.N.Y. Dec. 15, 2008) ("[e]ach workweek stands alone" under the FLSA).  Under the NLRA, the discrimination laws, or other related "labor laws", a critical statutory purpose is the protection of future rights (<u>e.g.</u>, bargaining and representation rights, reinstatement rights, etc.); here, wage claims are for sums certain which accrued in the past. Accordingly, it is not surprising that, with few exceptions, the <u>MacMillan</u> test, on which Plaintiffs rely, has not been applied.  In addition to <u>Steinbach v. Hubbard</u>, 51 F.3d 843 (9th Cir. 1995), which we have previously addressed (Def. MOL at 10-14), Plaintiffs cite only two district court cases from other jurisdictions for application of the <u>MacMillan</u> test to a successorship claim under the FLSA.[4]  <u>Chao</u> held only that application of the <u>MacMillan</u> standards precludes dismissal under Rule 12; it does not appear that application of the common law test was even considered.  While <u>Brock</u> applies the <u>MacMillan</u> standards, including the requirement for "actual knowledge" of the seller's wage debts, it pre-dates the case law in this Circuit which fully supports application of the common law standards.

### C.  <u>Even Application Of The So-Called "MacMillan Test" Would Not Trigger Successor Liability Here</u>

As previously demonstrated, even if the <u>MacMillan</u> test were to apply, a critical component—actual knowledge of the claims—does not here exist (<u>see</u> Def. MOL at 13-15).

---

[4] <u>Chao v. Concrete Mgmt.</u>, 2009 U.S. Dist. LEXIS 18619 at * 7-10 (D. Kan. 2009) and <u>Brock v. La Grange Equip Co.</u>, 1987 U.S. Dist. LEXIS 14532 at * 6-8 (D. Neb. 1987).

Plaintiffs' efforts to conjure notice (see Pl. MOL at 13-14) are based on pure speculation which, as detailed below, is insufficient to defeat summary judgment.

## II.   PLAINTIFFS FAILED TO SUBMIT ADMISSIBLE EVIDENCE SUFFICIENT TO PROPERLY OPPOSE THE MOTION FOR SUMMARY JUDGMENT

It is beyond cavil that "Where a summary judgment motion is supported or opposed by affidavits, those affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008)(internal citation omitted); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 469-470 (S.D.N.Y. 2008) ("Evidence submitted in support of a summary judgment motion must be admissible at trial, and the proponent of the evidence bears the burden of showing that the evidence is admissible")(Crotty, J). In Opposition to the Motion, Plaintiffs submit four affidavits purporting to contain relevant "facts". However, to defeat the pending Motion, Plaintiffs must put forward sufficient admissible evidence from which a jury can find the Madison Global Defendants were successors at common law. Stern v. Trustees of Columbia University, 131 F. 3d 305, 312 (2d Cir. 1997).

Plaintiffs' affidavits fail utterly to do so, reciting only their version of Balan's conduct as manager of the restaurants under new ownership,[5] and making nothing more than conclusory statements about their "belief" that Balan "acts" like an owner. See Basoc Affidavit ¶ 7 (fact that Balan permits certain individuals to dine without payment "leads me to believe that Nello is still Balan's restaurant"); Piedra Affidavit ¶ 30 ("I do not believe that the change in the company issuing my paychecks . . . means that Balan is no longer an owner"). The only other even arguably factual statements are the inadmissible hearsay offered by two affiants regarding

---

[5] The Madison Global Defendants dispute substantially all of the allegations in the Affidavits as they relate to time periods after the Transaction Date. However, those disputes are not relevant to the limited successorship issue here.

alleged statements made by Balan concerning his ownership status—statements plainly contradicted by the undisputed transactional documents.  Piedra Affidavit ¶ 22; Oprea Affidavit ¶ 8.  Plaintiffs' affidavits collectively concede that they do not possess <u>personal knowledge</u> of facts to contradict the sworn statement of Makkos,[6] thus they have not presented admissible evidence on the issue of restaurant ownership.  See <u>Opals on Ice v. Bodylines, Inc.</u>, 320 F. 3d 362, 368 (2d Cir. 2003) (mere suspicions and conjecture are insufficient to oppose summary judgment); <u>Lapine v. Seinfeld</u>, 2009 U.S. Dist. LEXIS 82304 at * 11 (S.D.N.Y. Sept. 10, 2009)(evidentiary material submitted in support of summary judgment was deemed by the court to be hearsay and was not considered).

This utter absence of admissible evidence is fatal to Plaintiffs' Opposition: on the uncontroverted facts setting forth the terms of the transaction at issue in this case, the Motion must be granted.[7]

## III.   THERE IS NO NEED FOR FURTHER DISCOVERY AS TO FACTS BEARING ON SUCCESSORSHIP

### A.   Plaintiffs Did Not Request Discovery Regarding The Contents Of The Motion

This motion was discussed at a conference before the Court on March 2, 2010. <u>See</u> Ex. A (Excerpts of Transcript).[8]  At that time, counsel for the Madison Global Defendants indicated the nature of the Motion and the evidentiary basis therefor:

MS. EKELMAN: We need an affidavit from Mr. Makkos, who will recite the

---

[6] Makkos' statement is corroborated by the Affidavit of attorney Mark Shehan submitted herewith.  <u>See</u> Section III(B) below.

[7] The Madison Global Defendants note in passing Plaintiffs' collateral attack on the evidence submitted by Defendant Makkos.  Pl. MOL at 5.  That a previous administrative law judge found Makkos' testimony in an unrelated proceeding on unrelated issues not to be credible has no bearing on this Court's review of the uncontroverted evidence submitted on summary judgment.  <u>See</u> <u>United States v. Branch</u>, 2006 U.S. Dist. LEXIS 72042, at *8-9 (S.D.N.Y. Oct. 2, 2006)(Crotty,J)(the finding of a lack of credibility in an unrelated proceeding does not mean that witness's testimony lacked veracity in this case).

[8] Exhibits are attached to the Affidavit of Felice B. Ekelman in Support of the Madison Global Defendants' Motion for Partial Summary Judgment as to the Absence of Successor Liability ("Ekelman Aff.") and are referenced herein as "Ex. __."

> terms of the acquisition to demonstrate that this was an arm's length transaction
> where he purchased only a limited number of assets.
>
> THE COURT: Okay.

Id. at 11.  In response to a mischaracterization of the transaction by counsel for co-defendants,

counsel for Madison Global Defendants elaborated:

> MS. EKELMAN: Okay. Well, they're not partners. Mr. Balan doesn't own
> Madison Global, doesn't have an ownership interest in Madison Global. And as
> we indicate in our letter, it's an arm's length transaction where both sides were
> represented by counsel. There was an asset purchase agreement which provides
> that Madison Global did not assume any responsibility or liability prior to the
> date of the transaction, and monies were paid, and right now, Mr. Balan is an
> employee, not an owner.

Id. at 11-12.  These comments, together with counsel's February 12, 2010 letter to the Court,

clearly set forth the mechanics of the proposed motion and the transaction itself.  Notably,

Plaintiffs' counsel did not request discovery, and requested only a short amount of time to

respond:

> THE COURT: Okay.  How much time do you need to respond, Mr. Pechman or
> Ms. Tischler?
>
> MS. TISCHLER: Two weeks should do it, Your Honor.

Id. at 15.[9]

> **B.      The Madison Global Defendants' Supplemental Submission Obviates Any
>          Need for Discovery**

To obviate any purported concerns raised in the Opposition, the Madison Global

Defendants provide herewith all schedules to the Asset Purchase Agreement, along with an

affidavit from the transactional attorney attesting to the completeness of that documentation.  See

Ex. B ("Shehan Aff.") and Exhibits thereto.  As set forth therein, certain schedules regarding

assets and liabilities never were finalized.  Id. ¶¶ 5, 7.  Despite the absence of these schedules as

---

[9] Accordingly, despite several opportunities to do so, Plaintiffs did not request the type of discovery which they now
purport to need.  Additionally, in their earlier letter to the Court opposing the making of the proposed motion,
Plaintiffs did not request any discovery as to the issues they now raise in their Opposition.  See Plaintiffs' Letter to
Judge Crotty February 19, 2010.  Plaintiffs instead made only passing reference to discovery as to the inapplicable
McMillan test.  Id. at 3.

of the Closing Date, the transaction was consummated.  Id. ¶ 4-5, 9. These documents fully reinforce the arm's length nature of this asset purchase.

**C.**     **Plaintiffs' Belated Request For Discovery Is Not Supported Under Rule 56(f)**

In their Opposition, Plaintiffs indicate that the motion is "premature", listing various documents they assert are necessary to its disposition.  As set forth above, the Madison Global Defendants now are filing a full set of the transactional documents.  In any event, we presume that Plaintiffs argument that the motion is premature is a request pursuant Federal Rules of Civil Procedure 56(f), which provides for a "continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Id. 56(f)(2).  Aside from the fact that Plaintiffs could and should have made this request earlier, Plaintiffs' Opposition does not meet the requirements of Rule 56(f).

A party seeking Rule 56(f) relief must submit an affidavit explaining: '[1] the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and [2] how those facts are reasonably expected to create a genuine issue of material fact; and [3] what efforts the affiant has made to obtain those facts; and [4] why those efforts were unsuccessful.' Desclafani v. Pave-Mark Corp., 2008 U.S. Dist. LEXIS 64672 at * 25 (S.D.N.Y. Aug. 22, 2008) quoting Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985).  Even treating the Opposition as the "affidavit" required by Rule 56(f), Plaintiffs' Opposition does not meet these requirements.

To begin with, Plaintiffs Opposition makes vague reference to an "opportunity to conduct discovery about the material facts upon which the Madison Global Defendants have based their motion."  Plaintiffs' MOL at 6.  Plaintiffs purport to inquire into "every aspect of the very suspicious and unusual transactions which led to the Madison Global Defendants' alleged ownership of the restaurant." Id.  As noted, the full transactional file is now available to the

7

Plaintiffs and the Court.  Nor have Plaintiffs identified facts which further discovery can be expected to illuminate.

Moreover, as set forth above, Plaintiffs did not request discovery regarding the facts underlying the Motion, despite several opportunities to do so.  <u>See</u> Section III(A), <u>supra</u>. Indeed, even after the conference on March 2, 2010, Plaintiffs did not promptly propound full discovery requests as t o successorship issues.  Initially, Plaintiffs served Interrogatories on March 8, 2010 (<u>see</u> Ex. C.).  Those Interrogatories, while limited in scope by Rule 33.3, requested only the names of the shareholders of the corporations which have owned the restaurants, and did not request the names of witnesses relevant to the transaction or successorship.  <u>Id</u>.  It was not until April 16, 2010, near the court-ordered deadline for service of document production requests that Plaintiffs served document requests, some of which may be relevant to the successorship issue (<u>see</u> Ex. D).  To date, Plaintiffs have not noticed the deposition of Makkos or anyone else on the issue of successorship or otherwise (Ekelman Aff. ¶ 6).  In sum, then, discovery is not necessary, nor have Plaintiffs demonstrated the need or justified their failure to act more promptly.

## IV.   <u>999 WAS FULLY AUTHORIZED TO SELL ITS ASSETS TO MADISON GLOBAL</u>

### A.   <u>Contrary To Plaintiffs' Assertions, The April 2009 Dissolution By Proclamation Of 999 Had No Impact On The Sale Of Assets</u>

In their Opposition, Plaintiffs observe that "999 Restaurant Corp…was dissolved by proclamation…prior to the Transaction Date" (Pl. MOL at 2), suggesting that the transaction somehow was illusory or even fraudulent.  They later conclude, without any support, that 999 "has not existed since that date and cannot legally have done any business in any discernable capacity."  <u>Id</u>. at 20.  This conclusory analysis fundamentally ignores basic New York corporate law.  The New York Business Corporations Law ("BCL") fully contemplates that corporations

undergoing dissolution may engage in business necessary to wind up their affairs – including specifically the sale of assets.  NY Bus Corp § 1005 ("The corporation shall proceed to wind up its affairs, with power to fulfill or discharge its contracts, collect its assets, sell its assets for cash at public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business").  Under BCL § 1005, corporations undergoing dissolution may continue to function for the purpose of winding up their affairs in the same manner as if the dissolution had not taken place.  Bowditch v. 57 Laight Street Corp., 443 N.Y.S.2d 785 (N.Y. Sup. Ct. 1981); Harris v. Stony Clove Lake Acres, 221 A.D.2d 833 (3d Dep't 1995) (corporation dissolved by secretary of state may defend foreclosure action relating to its corporate assets). Also see Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., 2007 U.S. Dist. LEXIS 27001 at * 51 (S.D.N.Y. Apr. 2, 2007)("a contract entered into after dissolution had been held enforceable by the New York state courts") citing Bowditch, 443 N.Y.S.2d at 788.[10]

Thus, 999's corporate status with the Secretary of State does not call into question the bona fides of the transaction.  Nor does the dissolution of 999 create a triable issue of fact regarding Plaintiffs' continuation theory of successorship.  Based on the corporate status of 999 at the time of the transaction, Plaintiffs argue that "there was a 'mere continuation' of the restaurants", and that Madison Global is a continuation of 999.  Pl. MOL at 20.[11]  However, "more continuation" or "de factor merger" requires far more than just dissolution of the seller. See Def. MOL at 8-9; see also Said, 2009 U.S. Dist. LEXIS 126383 at * 8 ("Courts consider several factors in determining whether a de facto merger has occurred including whether there

---

[10] The BCL further authorizes suit against – and recovery from – a dissolved corporation for causes of action arising prior to the dissolution.  See N.Y. Bus. Corp Law § 1006(b) ("The dissolution of a corporation shall not affect any remedy available to or against such corporation . . . for any right or claim existing or any liability incurred before such dissolution . . . ."); Flute, Inc. v. Rubel, 682 F. Supp. 184, 187 (S.D.N.Y. 1988) ("[A] corporation no longer in existence remains responsible for its liabilities until its affairs are fully adjusted.").

[11] The sole case cited by Plaintiffs on this point, O'Conner v. 11 W. 30th St. Rest. Corp., 1995 U.S. Dist. LEXIS 8085 (S.D.N.Y. June 13, 1995), concerns the sufficiency of a discrimination plaintiff's pleading of the successorship theory under Rule 12.  The Motion is not brought under Rule 12.

has been continuity of ownership, continuity of management, the dissolution of the selling company, and the assumption of liabilities by the purchaser").

Furthermore, "continuity of ownership" is "the most important factor" under the de facto merger analysis. Said, 2009 U.S. Dist. LEXIS 126383 at * 8, citing Nat'l Serv. Indus., Inc., 460 F.3d at 212. To analyze this continuity factor, the Court looks to whether shareholders of the predecessor become, at the time of the sale of the assets, shareholders of the successors [sic] corporation. Id. Absent this showing, the "de facto merger" doctrine cannot apply. Id. Here, the Sellers retained no ownership interest. Shehan Aff. ¶ 5; Makkos Aff. ¶ 3. Plainly no continuation or de facto merger occurred and the dissolution of 999 does not suggest otherwise.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Def. MOL and all other filings in support of this Motion, the Motion in all respects should be granted.

Dated: New York, New York
      April 27, 2010

                                        Respectfully submitted,

                                        JACKSON LEWIS LLP
                                        59 Maiden Lane
                                        New York, New York 10038
                                        (212) 545-4000

                                        By: _____
                                            Felice B. Ekelman
                                            Roger H. Briton

                                        ATTORNEYS FOR DEFENDANTS MADISON
                                        GLOBAL LLC AND THOMAS MAKKOS

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2010, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that on the 27th day of April, 2010, I caused a true and correct copy of REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS THOMAS MAKKOS AND MADISON GLOBAL LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE ABSENCE OF SUCCESSOR LIABILITY to be served upon Plaintiffs and upon Defendant Nello Balan, Pro Se via <u>Federal Express</u> as follows:

LOUIS PECHMAN, ESQ.
JESSICA N. TISCHLER, ESQ.
BERKE-WEISS & PECHMAN LLP
*ATTORNEYS FOR PLAINTIFFS*
488 Madison Avenue
New York, NY 10022-5701

NELLO BALAN, *PRO SE*
696 Madison Avenue
New York, NY 10065

Noel P. Tripp, Esq.

11